17 MAG 6401

ORIGINAL

Approved: [signature]
Matthew Laroche / Nicholas Lewin / Shane Stansbury
Assistant United States Attorneys

U.S. DISTRICT COURT FILED AUG 23 2017 S.D. OF N.Y.

Before: THE HONORABLE HENRY PITMAN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

JOSHUA ADAM SCHULTE,

Defendant.

- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT** DOC #

Violations of 18 U.S.C. §§ 2252A(a)(2)(B), (a)(5)(B), (a)(1), (b)(1), (b)(2), and 2

COUNTY OF OFFENSE: NEW YORK

STATE OF NEW YORK )
COUNTY OF NEW YORK : ss.:
SOUTHERN DISTRICT OF NEW YORK )

Jeff David Donaldson, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
(Receipt of Child Pornography)

1. From at least in or about 2009, up to and including at least in or about March 2017, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, knowingly did receive and attempt to receive material that contains child pornography that had been mailed, and using a means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, SCHULTE downloaded from the Internet electronic files depicting child pornography.

(Title 18, United States Code, Sections 2252A(a)(2)(B), (b)(1) and 2.)

**COUNT TWO**
(Possession of Child Pornography)

2. From at least in or about 2009, up to and including at least in or about March 2017, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, knowingly did possess and access with intent to view, and attempt to possess and access with intent to view, a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, SCHULTE accessed with intent to view and possessed images and videos of child pornography at his residence in New York, New York.

(Title 18, United States Code, Sections 2252A(a)(5)(B), (b)(2) and 2.)

**COUNT THREE**
(Transportation of Child Pornography)

3. In or about November 2016, in the Southern District of New York and elsewhere, JOSHUA ADAM SCHULTE, the defendant, knowingly did mail and transport and ship using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, child pornography, to wit, SCHULTE transported from Virginia to New York, New York, a computer containing images and videos of child pornography.

(Title 18, United States Code, Section 2252A(a)(1).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

1. I am a Special Agent with the FBI, and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and other people, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the

course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

2.     I know, based on my conversations with other law enforcement agents and other people, my participation in this investigation, my review of documents, and my training and experience, that:

a.     On or about March 13, 2017, the Honorable Barbara C. Moses, a U.S. Magistrate Judge for the Southern District of New York, issued a search warrant (the "Schulte Search Warrant") to search the residence of JOSHUA ADAM SCHULTE, the defendant, in New York, New York (the "Residence").

b.     On or about March 15, 2017, members of the FBI searched the Residence. During the course of that search, law enforcement officers recovered, among other things, multiple computers, servers, and other portable electronic storage devices (the "Subject Devices"), including SCHULTE's personal desktop computer (the "Desktop Computer").

3.     I know, based on my conversations with FBI agents including agents assigned to the Crimes Against Children Squad (the "CACS Agents"), my review of documents, and my training and experience, the following:

a.     During the course of reviewing the Desktop Computer, CACS agents encountered a volume of files in an encrypted container, approximately 54 GB in size (the "Encrypted Container").[1]

b.     As described in more detail below, law enforcement personnel were able to defeat the encryption used to protect the Encrypted Container by entering passwords recovered from a cellular telephone belonging to JOSHUA ADAM SCHULTE, the defendant.

---

[1] I understand, based on my conversations with computer scientists involved in this investigation, my training and experience, and my involvement in this investigation, that a "container" in this context refers generally to a data structure that holds one or more different types of data.

c. The Encrypted Container contains over ten thousand files, including images and videos, that appear consistent with child pornography (the "CP Files").

d. The CP Files are organized in folders, some of which are titled "downloads," "new," "kids," "old," "other," and "young." In addition, within the "downloads" folder, there are additional subfolders titled "13yo in bath" and "11yr old" that also contain child pornography.

e. A sample of the CP Files is listed below, along with summary descriptions:

i. "Jenny 9yo daughter - Full.mpg" is a video, approximately seventeen minutes long, found in a folder titled "downloads." The video depicts an approximately eight-to-ten-year-old prepubescent female engaged in sexual acts. For example, during part of the video, the prepubescent female's shins are tied to her thighs with a yellow rope, and a male hand then masturbates the prepubescent female's vagina. During another part of the video, the prepubescent female engages in oral sex on an adult male penis.

ii. "(Lolita)!Pthc - 2010 (Toddlergirl) Kait 5yo Willing-Ffk-Sk-Fcs.avi" is a video, approximately three minutes and twenty-three seconds long, found in a folder titled "downloads." The video depicts a prepubescent female approximately three-to-six years old engaging in various sex acts. For example, at one point in the video, the prepubescent female has her legs spread in a lewd and lascivious manner, and she touches her vagina while an adult male touches her vagina. The adult male then penetrates the prepubescent female's vagina with his index finger.

iii. "PTHC- beauty-cumshot 3yo THIS ROCKS pedo child toddler incest2yo 4yo 5yo 6yo 7yo 8yo babyj vicky laura jenny sofie fdsa hussyfan Russian korea.mpg" is a video, approximately six minutes and thirty-seven seconds long, found in a folder titled "new." The video depicts a female toddler that appears to be between the ages of two and four years old engaging in sexual acts. For example, at one point in the video, the toddler's legs are spread and her vagina shown in a lewd and lascivious manner. Later, an adult male masturbates his penis, rubs the toddler's vagina, and holds one of her legs open. The toddler later grabs the adult male penis.

iv. "(PTHC Lolifuck) 10Yo Katrina - Doggystyle (New 2008).avi" is a video, approximately six minutes and eighteen seconds long, found in a folder titled "new." The video depicts a prepubescent female who appears to be between nine and eleven years old engaging in sexual acts. For example, the video begins with the prepubescent female washing her vagina over what appears to be a pot of water and masturbating. Later, an adult male inserts his finger into the prepubescent female's anus and another finger rubs the prepubescent female's vagina.

f. Within the Encrypted Container, the CACS Agents also identified documents that contained links to numerous illicit websites (the "Websites"). Based on the CACS Agents' training, experience, and familiarity with the Websites, they believe that some of the Websites have been used to access, view, and download child pornography, as well as other types of pornography. Based on a forensic review of the Desktop Computer, some of the Websites known to contain child pornography appear to have been accessed by the user of the Desktop Computer.

4. I know, based on my conversations with other law enforcement agents, including FBI computer scientists involved in a forensic review of the Subject Devices (the "Computer Scientists"), that the CP Files reviewed by the CACS Agents were discovered by the Computer Scientists in the Encrypted Container on the Desktop Computer. Specifically:

a. During the examination of the Desktop Computer, the Computer Scientists determined that an encrypted virtual machine was present on the Desktop Computer (the "VM"). A virtual machine allows a user to create a separate computer operating system within a physical computer's operating system. The Computer Scientists were able to access the VM by inputting a password obtained from a forensic examination of a cellphone (the "Cellphone") belonging to JOSHUA ADAM SCHULTE, the defendant (the "Cellphone Examination").[2] Specifically, the Cellphone Examination identified various passwords that had been input by the user of the Cellphone to, for example, access the phone, applications on the phone, and/or certain websites.

b. Upon accessing the VM, the Computer Scientists identified a user account "Josh" with an encrypted home directory (the "Home Directory"). The Computer Scientists

---

[2] On or about March 20, 2017, JOSHUA ADAM SCHULTE, the defendant, consented to the search of his Cellphone.

were able to access the Home Directory by inputting a different password obtained from the Cellphone Examination of SCHULTE's Cellphone.

c. Upon accessing the Home Directory, the Computer Scientists identified a file titled "data.bkp" that was approximately 50 gigabytes in size (the "Data File"). Initially, when the Computer Scientists opened the Data File, the file appeared to contain only random, binary data. In addition, the Computer Scientists determined that an encryption software called VeraCrypt was installed on the VM. VeraCrypt allows users to create encrypted, password protected containers (*e.g.*, zip files) on their computers.

d. Based on the size of the Data File and its contents, which appeared to be highly random data, and based on the presence of VeraCrypt on the VM, the Computer Scientists determined that the Data File was potentially a VeraCrypt encrypted container. The Computer Scientists were subsequently able to decrypt the Data File using VeraCrypt Software by entering the same password used to access the VM. As described above, that password was obtained from the Cellphone Examination of SCHULTE's Cellphone. Once the Data File was decrypted, the Encrypted Container was accessible, and the CP Files were discovered within that container.

e. In addition, within the Encrypted Container, there was an additional file also titled "data.bkp" that was several gigabytes in size and that also contained random, binary data (the "Second Data File"). The Computer Scientists were subsequently able to decrypt the Second Data File using VeraCrypt Software by entering the same password used to access the VM and the Data File, as described above. Once the Second Data File was decrypted, it contained forensic artifacts of files having names indicative of child pornography.

5. I know, based on my conversation with the Computer Scientists, my review of documents, and my training and experience, that during their review of the Desktop Computer, the Computer Scientists discovered the Internet Relay Chat program (the "IRC Program") on it. The IRC Program is a computer application that allows users to communicate with other individuals and groups in a chatroom. I also know, based on my conversation with the Computer Scientists, my review of documents, and my training and experience, that the IRC Program on the Desktop Computer stored conversations between JOSHUA ADAM SCHULTE, the defendant - who, as explained below, communicated

using a username "Josh" - and other individuals. During those IRC Program chats, SCHULTE and others appear to discuss, among other things, their receipt and distribution of child pornography (the "Chats"). For example:

a. On or about January 8, 2009, SCHULTE, using username "Josh" communicated with an individual using the username "Sturm." During that conversation, Sturm asked SCHULTE "what's your email address" to which SCHULTE responded by providing an email address (the "Schulte Email Address"). I know, based on my discussions with individuals who know SCHULTE and are familiar with his use of electronic communications, that the Schulte Email Address, which includes SCHULTE's name, is used by SCHULTE.

b. On or about January 17, 2009, SCHULTE, using username "Josh" communicated with username "Sturm." During that conversation, SCHULTE and Sturm appeared to discuss where to store child pornography on their computers to avoid detection. Specifically, the following exchange occurred, in substance and in part:[3]

SCHULTE: You can use it [an encrypted location] to store data as well, backup data or w/e . . . it's encrypted, raided, and you can be sure of privacy.

Sturm: A great place for kiddy porn!

[. . . .]

SCHULTE: lol . . .

Sturm: Or normal porn. Or backups.

SCHULTE: I guess if that's what gets you off. .

Sturm: Backups? "This tarball sure is hot. ."

SCHULTE: lol. I meant kiddy porn.

Sturm: oh. yeah.

---

[3] The portions of the Chats included in paragraph 5 were copied verbatim and not corrected for typographical errors.

SCHULTE:    Just don't put something *too* illegal on
            there. . .

Sturm:      Like what?

SCHULTE:    I'd be pretty pissed off if the FBI knocked
            on my door and said I had terrorist plans to
            nuke the US on my server.

Sturm:      Oh, well.  It's all encrypted.  So you could
            tell the FBI to STFU [shut the fuck up]

SCHULTE:    hahaaa.  Yes, well. . encryptions can be
            broken.

        c.      On or about March 12, 2009, SCHULTE, using
username "Josh," communicated with username "Sturm" and username
"hpb."  During that conversation, SCHULTE, Sturm, and hpb
appeared to discuss where to obtain child pornography.
Specifically, at one point, SCHULTE asked the other individuals
in the chat "[w]here does one get kiddie porn anyways?"  SCHULTE
subsequently posted an Internet address that, based on my
training and experience, appeared to link to an image of child
pornography.  The address posted by SCHULTE included "images,"
"kiddie," and "porn."  After posting the link, the following
exchange occurred, in substance and in part:

Sturm:      It's interesting.  Lalz.  How is that even
            remotely arousing.

SCHULTE:    ughh idk

Sturm:      I thought kiddie porn was of like 15 year
            old girls.

SCHULTE:    yeah

Sturm:      But whatever floats your boat, I guess. .

SCHULTE:    I guess. . I mean, I guess they like it
            because the girls are pure?  I dunno about
            why they'd like little boys?

Sturm:      Well, 15 year old girls are sexy. . But
            maybe that's because I'm 16.

SCHULTE: hmm I dunno if it's the looks they're attracted to or just the thought of them since they're probably virgins

d. Later, on March 12, 2009, SCHULTE and Sturm discussed downloading child pornography from the Internet using a file sharing program called "Limewire" and viewing child pornography involving a five year old boy. Specifically, the following exchange occurred, in substance and in part:

SCHULTE: Apparently limewire runs rampant with child porn. . They say "report it to the FBI", but will illegally download music. . damn now I'm interested. . . I might have to search it :P Type in "porn" and see what shows up

[. . . .]

SCHULTE: You think I should search it? :P

Sturm: Why not?

SCHULTE: How do people get little kids to do porn anyway? Is it like 5 year olds?

Sturm: They kidnap them I guess. Apparently there are like facebook and myspace child prostitution rings.

SCHULTE: That one dude was into that like 5yr old boy hah really?

Sturm: Yeah

SCHULTE: oh you saw "Taken" right?[4]

Sturm: Yeah. That was some sick stuff. .

SCHULTE: Like their sex business they have. That's kinda cool.

---

[4] I believe, based on my discussions with other law enforcement officers, and my training and experience, that SCHULTE's reference to "Taken" is to a movie in which teenage girls are kidnapped by human traffickers to be sold for sex.

           e. On or about March 13, 2009, SCHULTE, using username "Josh," communicated with an individual using username "Sturm" and an individual using username "Niche." During that conversation, SCHULTE appeared to give Sturm and Niche access to his server to view potential child pornography and asked for their opinion on whether some of the participants appeared to be minors. Specifically, the following exchange occurred, in substance and in part:

SCHULTE: It doesn't really look like kid porn to me. but idk [I don't know]. you guys decide :P

Sturm: heh. . Lemme move to my workstation. .

Niche: heh kk

SCHULTE: http://cryptm.org/~josh/porn/

Sturm: Wazzup ma homies

Niche: lol

Sturm: I probably want to scp[5] this. .

Niche: you have a whole folder for it??

Sturm: Dude, scp it. You don't want to end up in jail.

Niche: lol

SCHULTE: I'll take it down in a bit. Not like they will even know.

Sturm: What's the path?

SCHULTE: I don't see how they could tell. .

Niche: heh

SCHULTE: /home/josh/http/porn

---

[5] I believe, based on my discussions with other law enforcement officers, and my training and experience, that "scp" refers to a network protocol that supports secure file transfers to keep the data confidential while in transit.

Sturm: I dunno either, but I'm not taking the risk. . Which one should I watch first?

Niche: hahaha

Sturm: rename these things for god's sake. .

SCHULTE: lol

Niche: like it was a restaurant or some shit

SCHULTE: alright. . hold up niche, I'm renaming

Niche: oh fuck. . . I'll have to reopen the link. .

SCHULTE: ok now try

Sturm: Downloadin' "not_kiddie_porn1.mpg".

SCHULTE: lol

[. . . .]

SCHULTE: dude it looks just like regular porn. .

Sturm: I don't even like porn. .

SCHULTE: you cant even tell they're underage. . if they even are. . .

f. On or about June 28, 2009, SCHULTE, using username "Josh," communicated with username "Sturm" and others. During that conversation, SCHULTE appeared to discuss sharing an encrypted server with other individuals to distribute child pornography. Specifically, the following exchange occurred, in substance and in part:

SCHULTE: Bleh, yall fools can host ye shit on the crypt.

http://cryptm.org/~hpb/
http://cryptm.org/~dave/
http://cryptm.org/~niall/

[. . . .]

Niall:     So what's the story with cryptm then
           Josh/Sturm?

Sturm:     Josh started it so he could securely host
           all his child/rape porn.

SCHULTE:   I got tired of my old server sucking back in
           Lubbock. Heh. . And, I hadn't built a
           computer in like, almost 6 months. . So, I
           build me a sweet server with 3TB, RAID, etc.

Niall:     Nice.  Where is all the stuff up there then?

Sturm:     http://cryptm.org/data

6.     On or about March 13, 2017, pursuant to a search
warrant authorized by the Honorable Barbara C. Moses, Google,
Inc. produced information, including a history of JOSHUA ADAM
SCHULTE, the defendant's, Google searches (the "Google
Searches").  Based on my review of those Google Searches, I have
learned, among other things, that on a number of occasions in or
about 2011 and in or about 2012, SCHULTE appeared to search the
Internet for child pornography.  For example: (i) on or about
April 9, 2011, SCHULTE conducted a Google Search for "child
pornography" on at least three occasions; (ii) on or about
October 15, 2011, SCHULTE conducted Google Searches for "movie
where father videos daughter and friend sex" and "movie where
father videos child porn"; and (iii) on or about May 15, 2012,
SCHULTE conducted a Google Search for "female teenage body by
year."

7.     On or about June 26, 2017, JOSHUA ADAM SCHULTE,
the defendant, was interviewed in the presence of his attorneys
(the "June 2017 Interview").  During the course of the June 2017
Interview:

a.     SCHULTE identified a photograph of the
Desktop Computer as his primary computer.  He stated that he was
the sole and exclusive user of the Desktop Computer and that he
did not give anyone else access to the Desktop Computer.

b.     SCHULTE stated that he purchased the Desktop
Computer himself while he was living in Virginia, and
transported the Desktop Computer from Virginia to New York in or
about November 2016, when he moved.

        c. SCHULTE stated that he used the Desktop Computer for various activities, including gaming and browsing the Internet.

d. SCHULTE explained that he had personally installed encryption on the Desktop Computer. He stated that he did not share the password for the encrypted portions of the Desktop Computer with anyone else.

e. SCHULTE was asked what he maintained inside the encrypted portions of the Desktop Computer. He responded that he used the encrypted portions of his Desktop Computer to store pornography. He further claimed that he encrypted it because he did not want his family to find it. When asked if he would be willing to provide investigators with the password to the encrypted portions of the Desktop Computer, he declined.

f. SCHULTE also acknowledged that he maintained communications with others using the IRC Program, which he hosted on his Desktop Computer. SCHULTE stated that his own screen name on the IRC Program was "Josh."

8. During the course of the June 2017 Interview, SCHULTE also stated that he was interested in the return of the computing devices seized during the course of the March 2017 search of his Residence. Specifically, SCHULTE was principally interested in the return of his cellular telephone – on which the passwords to the encrypted portions of the Desktop Computer were found pursuant to the Cellphone Examination – and the return of his Desktop Computer – where the child pornography images were located in an encrypted container.

WHEREFORE deponent prays that a warrant be issued for the arrest of JOSHUA ADAM SCHULTE, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

Special Agent Jeff David Donaldson
Federal Bureau of Investigation

Sworn to before me this
23rd day of August, 2017

THE HONORABLE HENRY PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK