UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                        :
                                   Docket #1:17-mj-06401-
 UNITED STATES OF AMERICA,     : UA All Defendants

                  Plaintiff,  :

  - against -                 :

 SCHULTE, JOSHUA ADAM         : New York, New York
                                   August 24, 2017
                  Defendant.   :

------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE HENRY B. PITMAN,
UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          UNITED STATES ATTORNEY'S OFFICE
                        BY:  Matthew J. Laroche, Esq.
                        One St. Andrew's Plaza
                        New York, New York 10007

For the Defendant:      LAW OFFICES OF KENNETH F. SMITH, PLLC
                        By:  Kenneth F. Smith, Esq.
                        16 Court Street, Suite 2910
                        Brooklyn, New York 11241

                        EVERETT & EVERETT
                        By:  Taylor Aaron Koss
                        3 Columbus Circle -  Floor 15
                        New York, NY 10019-8716



Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> |
|---|---|---|---|---|
| None | | | | |

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|
| None | | | | |

```
 1                         PROCEEDINGS                    3

 2              THE CLERK:  US v. Joshua Adam Schulte.

 3              Counsel, please state your name for the record.

 4              MR. MATTHEW LAROCHE:  Good afternoon, your Honor,

 5   Matt Laroche for the government.  And with me is Jeffrey

 6   David Donaldson, a Special Agent with the FBI.

 7              THE HONORABLE HENRY PITMAN (THE COURT):  Okay.

 8   Good afternoon.

 9              MR. KENNETH SMITH:  For Mr. Schulte, Kenneth

10   Smith; and with me, co-counsel, Taylor Koss.

11              MS. TAYLOR KOSS:  Good afternoon, Judge.

12              THE COURT:  Good afternoon.

13              And was it Mr. Smith?

14              MR. SMITH:  Yes, your Honor.

15              THE COURT:  I'm sorry, what was your first name?

16   I just want to add it on the docket sheet.

17              MR. SMITH:  Sure.  Kenneth.

18              THE COURT:  Kenneth Smith.

19              MR. SMITH:  Yes.

20              THE COURT:  Okay, all right.  Mr. Schulte, my

21   name is Magistrate Judge Pitman.  The purpose of this

22   proceeding is to inform you of certain rights that you

23   have, to inform you of the charges against you, to consider

24   whether counsel should be appointed for you, and to decide

25   under what conditions, if any, you should be released.
```

```
 1                          PROCEEDINGS                    4

 2              Can I have the date and time of arrest, please?

 3              MR. LAROCHE:  Yes, your Honor.  The defendant was

 4    arrested this morning at approximately 5:30 AM.

 5              THE COURT:  Thank you.  Mr. Schulte, you have the

 6    right to remain silent.  You're not required to make any

 7    statements.  Even if you have made any statements to the

 8    authorities, you need not make any further statements.

 9    Anything you do say can be used against you.

10              You have the right to be released either

11    conditionally or unconditionally pending trial unless I

12    find that there are no conditions or combination of

13    conditions that would reasonably assure your presence in

14    court and the safety of the community.

15              You have the right to be represented by counsel

16    during all court proceedings, including this one, and

17    during all questioning by the authorities.  If you cannot

18    afford an attorney, I will appoint one to represent you.

19              It is my understanding that you're currently

20    represented by retained counsel.  I want to advise you that

21    the right to the appointment of counsel is an ongoing right

22    that you possess throughout these proceedings.  If at any

23    time you're unable to continue with retained counsel

24    because you've run out of money, you can apply to the court

25    at any time for the appointment of counsel.  Do you
```

```
 1                        PROCEEDINGS                    5
 2  understand that?
 3              MR. JOSHUA ADAM SCHULTE (THE DEFENDANT):  Yes,
 4  your Honor.
 5              THE COURT:  All right, Mr. Schulte, you're charged
 6  in a complaint in three counts.  Count 1 charges you with
 7  receipt of child pornography in violation of Title 18,
 8  United States Code, Section 2252(a)(A)(ii)(b).  Count 2
 9  charges you with possession of child pornography in
10  violation of Title 18, United States Code, Section
11  2252(a)(A)(v)(b).  And Count 3 charges you with
12  transportation of child pornography in interstate and
13  foreign commerce, in violation of Title 18, United States
14  Code, Section 2252(a)(A)(i).  Mr. Schulte, have you
15  received a copy of the complaint?
16              THE DEFENDANT:  Yes.
17              THE COURT:  I'm sorry.  I misspoke.  It should
18  have been directed to Mr. Smith.  My mistake.
19              MR. SMITH:  Yes, your Honor.
20              THE COURT:  Mr. Smith, have you received a copy of
21  the complaint?
22              MR. SMITH:  I have.
23              THE COURT:  Have you reviewed it with your client?
24              MR. SMITH:  I have, your Honor.
25              THE COURT:  And do you waive its reading?
```

```
 1                      PROCEEDINGS                    6

 2            MR. SMITH:  I do.

 3            THE COURT:  Thank you.

 4            Mr. Schulte, you have the right to a preliminary

 5   hearing at which the government will have the burden of

 6   establishing that there's probable cause to believe that

 7   the crimes charged in the complaint has been committed by

 8   you.  If probable cause is not established, you'll be

 9   released from the charges.  If probable cause is

10   established, the government will then have the right to

11   proceed to trial against you.  If you're in custody, you

12   have the right to a preliminary hearing within 14 days.  If

13   you're not in custody, you have the right to a preliminary

14   hearing within 21 days.  However, no preliminary hearing

15   will be held if either the grand jury indicts you or if the

16   government files an accusatory instrument called an

17   information prior to the date set for the preliminary

18   hearing.  I'll set the preliminary hearing date after I

19   determine bail.

20            I will hear from the government first and then

21   defense counsel.

22            MR. LAROCHE:  The government seeks detention,

23   your Honor.

24            THE COURT:  All right, do the parties want to

25   proceed on a detention hearing immediately?
```

```
 1                        PROCEEDINGS                    7

 2             MR. SMITH:  Yes, Judge.

 3             THE COURT:  Okay.  All right.  I'll hear from the

 4   government first, and then I'll hear from defense counsel.

 5             MR. LAROCHE:  Thank you, your Honor.  The

 6   government believes that the defendant is both a flight

 7   risk and a danger to the community and that all the factors

 8   the Court considers in determining whether bail is

 9   appropriate support that finding.

10             First, with respect to the nature and

11   circumstances of the offense, the dangerous conduct that

12   are underlying these charges involve the receipt,

13   possession and transportation of child pornography.  The

14   seriousness of these charges is why there is a presumption

15   in favor of detention.  And the reason for that presumption

16   is clear; it's because child pornography is an insidious

17   offense that involves targeting children, a particularly

18   vulnerable population.

19             The nature and circumstances of this offense in

20   particular are troubling.  This is not a run-of-the-mill

21   child pornography case.  The defendant was caught with

22   literally over 10,000 images and videos of child

23   pornography.  It's an enormous volume of child pornography,

24   and it included sadistic and masochistic images and videos

25   of children as young as a few years old who had been
```

1                             PROCEEDINGS                        8

2    brutally sexually assaulted.  And the manner and the

3    sophistication with which he hid this makes this also

4    particularly troubling.  The defendant stored this child

5    pornography beneath three layers of encryption.  And

6    beneath those layers he neatly organized it into different

7    folders, according to his preferences, and stored it for a

8    period of years.  This is not a defendant who simply

9    downloaded and then deleted the child pornography.

10            The defendant also communicated regularly with

11   others about the sharing and about the downloading and

12   distribution of child pornography, even at times bragging

13   about how he could download it and even bragging about

14   different images that he was presenting to other

15   individuals.

16            And, finally, the defendant also had a document

17   that he maintained in his encrypted containers that had a

18   list of locations where he could essentially illicitly and

19   illegally download these images on websites --

20            THE COURT:  When you say a "list of locations," a

21   list of websites or --

22            MR. LAROCHE:  Yes, your Honor.  These were, we

23   believe, locations where the defendant went to illegally

24   download this material.  And they're websites that are, in

25   the officer's experience, difficult to detect, difficult to

1

2    trace back to.  And he maintained this very long list of

3    sites so that he could keep going back, keep collecting

4    more and more images, which led to the cache of images he

5    had.

6            The weight of the evidence here also supports

7    detention.  The evidence is overwhelming.  As I mentioned,

8    there were about over 10,000 images and videos of child

9    pornography.  They were found on the defendant's computer.

10   They were buried beneath three levels of encryption, and

11   those levels of encryption, at each level the passwords for

12   those at each level of encryption were found on the

13   defendant's cell phone.  These are passwords that are the

14   defendant's.  So the government would submit there's not an

15   argument here that this possibly could be someone else who

16   placed these on his computer.

17           There's also extensive chats, some of which we

18   cite in the complaint, which show that the defendant had a

19   clear interest and desire not only to view these images but

20   to share it with other individuals.  Not only that he liked

21   to view these images, but he shared it through talking on

22   chats, he discussed it at length with other individuals.

23           And even more critical evidence, the defendant has

24   already admitted that this computer was his.  He admitted

25   that no one else used it.  He admitted that he was the one

PROCEEDINGS                    10

1

2   who transported it.  And he has admitted that he is the one

3   in the IRC chat.  So there's really no dispute --

4           THE COURT:  He is the one in the what chats?

5           MR. LAROCHE:  I'm sorry, your Honor, the IRC

6   chats that are cited in the complaint.

7           THE COURT:  What does "IRC" stand for?

8           MR. LAROCHE:  You know, I'm not sure offhand,

9   your Honor, but my understanding is it's a program that you

10  can download onto your computer, which is basically like a

11  chat that you can chat back and forth with.

12          THE COURT:  Okay.  All right.

13          MR. LAROCHE:  But the user name -- so the user

14  name on the IRC chat that we cite as Schulte, the user name

15  is Josh.  The defendant has already admitted that he is

16  Josh and that he communicated using that user name.  So

17  there's really no dispute here that that is him.

18          With respect to the history and characteristics of

19  the defendant, I want to focus on two things that we think

20  particularly support detention here.  First, the defendant

21  is highly sophisticated when it comes to computers.  That's

22  shown not just with how he stored this information but also

23  his background.  Up until today he was employed as a senior

24  software engineer for Bloomberg.  Before that, he worked

25  several years for various government agencies, where he had

1
2  similar roles.  He has expertise and experience in

3  encryption.  He has expertise and experience in using tools

4  such as wiping tools, which essentially deletes any

5  evidence that someone went to certain websites, accessed

6  certain things, may have looked at certain images or

7  videos.  So he absolutely knows how to hide his tracks, and

8  I think it shows by the level of the carefulness he took.

9          THE COURT:  Okay.  But you've already got the

10  computer isolated?

11          MR. LAROCHE:  We have the computer, that's

12  correct, your Honor.

13          THE COURT:  Okay.  I'm just trying to understand

14  how the expertise in computers ties into risk of

15  dangerousness and risk of nonappearance.

16          MR. LAROCHE:  Sure, your Honor.  Well, he's

17  already secured another computer.  So as of today when they

18  went into his apartment, he has another computer that he's

19  already gotten and has already had -- we assume have

20  various programs on.

21          The problem here is that his expertise makes it

22  very difficult to be able to detect any additional conduct

23  by him in terms of downloading these images or continuing

24  in the same type of conduct that he has done for years.

25          And just one thing to note, in March, when the

```
 1                        PROCEEDINGS              12
 2  officers went to his apartment, it wasn't as though he had
 3  one computer.  This defendant's, we believe, his identity
 4  is really tied to computers and electronic devices.  He had
 5  numerous computers, servers, other storage equipment.
 6            THE COURT:  How many computers?
 7            MR. LAROCHE:  So he had one desktop computer,
 8  your Honor, but he had a number of servers and other
 9  storage devices that could store over 10 terabytes of data.
10  It's an enormous amount of data that the government is
11  still continuing to work through.  So we don't even know
12  yet if we've gotten the full cache of images that could be
13  on this defendant's computer.
14            And part of the difficulty with this is that the
15  defendant is sophisticated enough to be able to create data
16  files that virtually are undetectable.  And it's been very
17  difficult to get through that entire cache of data.  So he
18  has some sophistication to be able to hide this, he has the
19  sophistication to be able to do this, whether it's his
20  computer or if he gets another computer after, if he was to
21  be released.  We just do not think there's any set of
22  conditions that would prevent that risk.
23            The second thing about his history and
24  characteristics, your Honor, that is particularly important
25  is we have evidence, we believe that the defendant actually
```

```
 1                          PROCEEDINGS                    13

 2   engaged in sexual assault on an adult female in April of

 3   2015.  If I can explain what evidence we have?  On one of

 4   the defendant's phones that was recovered in March of 2017

 5   there are a series of pictures of a female who the

 6   defendant knows and who at a time stayed with the defendant

 7   is passed out on the floor of the defendant's bathroom.  In

 8   those pictures, her underwear appears to be removed, and

 9   then she is sexually assaulted by a pair of hands.  To be

10   clear, we do not have --

11             THE COURT:  It's a video?

12             MR. LAROCHE:  It's a series of images; there's no

13   video.

14             THE COURT:  I see.  Okay.

15             MR. LAROCHE:  To be clear, we do not have

16   anybody's picture, but it looks to be someone taking

17   pictures of themselves doing this.  And they were found on

18   the defendant's phone.  The pictures are extremely

19   troubling, not just because of their content but because it

20   shows the defendant appears to be someone who will act out

21   on his impulses and engage in dangerous sexual behavior.

22   And we know from the IRC chats that the defendant's

23   impulses are not just to condone child pornography but also

24   to condone sexual assault.  I can proffer to the Court that

25   there's IRC chats where the defendant talks about using the
```

```
 1                        PROCEEDINGS              14

 2   date rape drug.  There's IRC chats where the defendant

 3   talks about having sex with high school girls.  There's IRC

 4   chats where the defendant sees a user name, then changes

 5   his user name to "irate babies," and the defendant

 6   responds, "That's pretty cool."

 7            So here we have a defendant who has engaged in a

 8   lot of really dangerous behavior.  In our view, there are

 9   no set of circumstances that can confidently assure the

10   Court that he's not going to continue to try to download

11   child pornography, encourage others to download it and

12   share it and just generally engage in very dangerous sexual

13   activity.

14            THE COURT:  Without getting too graphic, this

15   series of pictures, it sounds as if the woman on the floor

16   is touched in very delicate private areas; is that

17   generally the nature of the pictures?

18            MR. LAROCHE:  That's correct, your Honor.

19            THE COURT:  And she doesn't respond; she's

20   unconscious?

21            MR. LAROCHE:  She's unconscious, and we

22   understand, based on our investigations, they were

23   absolutely not consented to.

24            THE COURT:  Okay.

25            MR. LAROCHE:  So there's no question that this is
```

```
 1                          PROCEEDINGS             15
 2  some sort of situation where there wasn't consent involved.
 3            THE COURT:  All right.
 4            MR. LAROCHE:  Beyond simply being a danger, your
 5  Honor, we believe that he is a flight risk.  The defendant,
 6  as of today, is unemployed.  He has very few contacts to
 7  New York City otherwise.  He's also facing charges which
 8  carry a mandatory minimum term of five years.  By the way
 9  we calculate his Guidelines, we think he'd probably be
10  close to the statutory max here.  So he has a strong
11  incentive, based on the weight of the evidence and the
12  length of sentence he's facing, to flee.
13            So in sum, we just don't think that there are a
14  set of conditions here that can ensure that he is going to
15  appear for court or not be a danger to the community, and
16  we'd ask that he be detained.
17            THE COURT:  All right.  Okay.
18            Mr. Smith?
19            MR. SMITH:  Thank you, your Honor.
20            Judge, I am respectfully requesting that you
21  consider a bond for Mr. Schulte, in harmony with the
22  pretrial service's recommendation that's been made.
23            Judge, Mr. Schulte's a 30-year-old individual
24  with absolutely no prior criminal contacts; he's never been
25  convicted of any crimes.  He's never even been arrested.
```

```
 1                        PROCEEDINGS              16
 2   He's actually, Judge, a great patriot.  He spent virtually
 3   his entire professional career dedicated to fighting
 4   domestic and international terrorism.  He started that
 5   career, Judge, with a series of internships at the Central
 6   Intelligence Agency and the National Security Agency.  They
 7   led to full-time employment there for over five years.  He
 8   was a top computer scientist and analyst with the highest
 9   security clearances available, Judge.  And he worked
10   literally on a daily basis to develop and perfect computer
11   tools designed to make our country safer, a safer place for
12   all of us, Judge; and he has made living in this nation a
13   safer place.
14           He, in dedicating his, you know, his efforts to
15   serving the country, he has forgone considerable financial
16   rewards that he could have gotten by working in the private
17   sector, Judge.
18           Pursuant to his employment and his security
19   clearances, he has undergone extensive and extreme vetting,
20   including numerous polygraph examinations.  He was
21   subjected to polygraph examinations in the beginning, when
22   he started, and continuing throughout his career.  And,
23   Judge, particularly I think it's important to note in those
24   polygraph examinations and as part of that vetting, he was
25   asked specifically about this conduct, and he passed all of
```

```
 1                           PROCEEDINGS              17

 2   those polygraphs with flying colors.

 3           Judge, it's important because --

 4           THE COURT:  He was asked about child pornography

 5   in the polygraphs?

 6           MR. SMITH:  That's correct, Judge.

 7           And, Judge, why is it important?  Because Joshua

 8   Schulte --

 9           THE COURT:  I'm sorry, he worked for the CIA and

10   the NSA from when to when?

11           MR. SMITH:  2010 to approximately 2016.

12           THE COURT:  Okay.  Go ahead.

13           MR. SMITH:  It's important, Judge, because our

14   client never possessed child porn.  He never had it on his

15   computer, he didn't have it on his hard drive or any

16   personal files.

17           Now, Judge, Mr. Schulte does run a computer

18   server -- it was started around 2009 -- with other computer

19   enthusiasts around the country for the purpose of hosting

20   gaming and other computer applications.  Now, over the last

21   decade numerous users on this server have stored items on

22   the server.  The server was encrypted.  It's a Veri-Crypt

23   encrypted volume.  And that means that as a practical

24   matter, your Honor, that anyone who looks at the encrypted

25   files or the file names would have no idea what they
```

1
2    pertain to because they appear as a random binary file.  So
3    it's our understanding, from reading this complaint, that
4    these materials were seized from a virtual, an encrypted
5    virtual machine.  And even the government concedes, as we
6    read in the complaint, your Honor, that the files appear to
7    contain random binary data.  The point I'm trying to make
8    to your Honor is without decrypting the files, it would be
9    absolutely impossible for anybody to know what they
10   contain.  And it's important because we're talking about a
11   public server that numerous individuals throughout the
12   country had the passwords to, had access to, stored
13   materials on and in an encrypted fashion where it's not
14   immediately apparently what the materials are, even as the
15   government concedes.
16          Now, Judge, another important point is that the
17   only way --
18          THE COURT:  Let me ask you this:  Why was
19   Mr. Schulte operating servers for third parties to use?  I
20   mean, I thought -- I don't know, my understanding and
21   knowledge of computers and networking is rudimentary, but
22   why would a private individual do that?
23          MR. SMITH:  Judge, there's a lot -- there's many
24   different reasons and, you know, there's people with a lot
25   more computer knowledge than I, but I will say that a

```
 1                        PROCEEDINGS              19
 2   constant problem in computing is storage, storage space.
 3   All the computers come out each year with more storage.
 4   Now there's cloud storage solutions --
 5              THE COURT:  No, I understand that, but my
 6   understanding is servers require hardware, they require
 7   electricity, there are costs involved.  Am I incorrect?
 8              MR. SMITH:  I there's some --
 9              MR. TAYLOR KOSS:  No, Judge, with regard to that,
10   you're not incorrect at all, but --
11              THE COURT:  So why does a private citizen do that?
12   I mean, why spend the money for the hardware, for the
13   electricity --
14              MR. KOSS:  Right, Judge.  And I didn't know the
15   answer to that before, either, but I did some research and
16   they all the time -- this is not a random thing -- across
17   America private individuals host their servers and they
18   allow access to people either in their family or friends or
19   public individuals, and they give them space, they -- a lot
20   of these new games are community-based games that a lot of
21   people are playing on a shared platform.  And they often,
22   when they do that and they subscribe to these community-
23   based games, they often do that on private servers.  And
24   the actual monetary investment is only a couple of hundred
25   dollars, especially when, admittedly, Mr. Schulte has a
```

```
 1                          PROCEEDINGS                    20
 2   high level of computer expertise.  Part of this stuff is
 3   finally building it and putting together your own stuff and
 4   building your own computers and seeing if you can put
 5   together a good store and see if you could have a nice
 6   server with space and, you know, your friends and family
 7   could store their files and their pictures on it if they
 8   don't have direct access to a computer.
 9           And so those are some of the reasons.  There
10   certainly is nothing nefarious in how he built it, and he's
11   had it in place for the entirety of time, also the entirety
12   of time that he worked for the CIA, and they were aware of
13   it and had no issues with it.
14           THE COURT:  Go ahead.
15           MR. SMITH:  Well, Judge, an incalculable number of
16   people would have had access to that server.  The --
17           THE COURT:  Where was the hardware located?
18           MR. SMITH:  First in Virginia and then in New
19   York.
20           THE COURT:  In his apartment?
21           MR. SMITH:  Correct.
22           THE COURT:  Go ahead.
23           MR. SMITH:  Now, I think it's important, Judge,
24   because it tends to demonstrate that our client had no
25   basis of knowing if there's any alleged child pornography
```

```
 1                        PROCEEDINGS                    21
 2   or had any reason to believe that he was in any way, shape
 3   or form in contact with any child pornography.  You know,
 4   Judge --
 5             THE COURT:  Well, the government proffered that he
 6   had the passwords on his cell phone.
 7             MR. SMITH:  These are -- right.  And, again,
 8   Judge, I'd like to emphasize that he had --
 9             THE COURT:  Do you want to respond to that?
10             MR. SMITH:  Sure.  He had passwords on his phone
11   that were from a decade ago and passwords that had been
12   publicly made available that --
13             THE COURT:  No, but if I understand the
14   government's proffer correctly, they were passwords that
15   decrypted the pornography.
16             MR. SMITH:  Passwords --
17             MR. KOSS:  Judge, these were passwords that
18   were -- that anybody who acts as the server can use to
19   encrypt or decrypt the things.  And so they were on there,
20   by the way, from about 10 years ago.
21             THE COURT:  So that -- hold on a second.  Does
22   that mean, then, that Mr. Schulte could decrypt the images
23   on the server?
24             MR. KOSS:  He could if he encrypted something
25   himself and he wanted to decrypt it, he could, but --
```

```
 1                        PROCEEDINGS              22

 2               THE COURT:  No, but I thought -- are they

 3     public -- I'm not sure what the purpose of a public

 4     password is if it's public.  It seems to defeat the --

 5               MR. KOSS:  Well, no, because some people --

 6               THE COURT:  It seems to defeat the purpose of a

 7     password.  But --

 8               MR. KOSS:  Well, if some people want --

 9               THE COURT:  -- if I understand -- what I

10     understood the government to proffer -- and I'm going to

11     hear from the government again -- is that the passwords on

12     Mr. Schulte's phone could be used to decrypt the

13     pornographic images.  Is that correct or incorrect or

14     something?

15               MR. KOSS:  That is not correct.  It is correct and

16     incorrect at the same time.  It is a --

17               THE COURT:  I don't know how that can be, but --

18               MR. KOSS:  -- general -- well, because it does

19     decrypt it, but it decrypts anything with a Veri-Crypt.  It

20     was the same password that they used to gain access to the

21     actual server itself.  It was a generic password.

22               And, Judge, I think what's important, what they

23     didn't tell you is that he voluntarily gave them that cell

24     phone months ago, knowing that the passwords were on it.

25     He handed it over to them.  This isn't something that they
```

```
 1
 2   discovered after the fact; this was in an unrelated issue.
 3   Mr. Schulte was cooperating fully with the federal
 4   authorities.  They asked for access to his cell phone, and
 5   he gave it to them.  It was not pursuant to a warrant.  It
 6   was encrypted.  The phone was password protected.
 7   Mr. Schulte, in front of the agents, opened the phone, put
 8   in the password, handed it over to them to make sure that
 9   nothing on the phone could be destroyed or altered and
10   handed it right to the authorities.
11              THE COURT:  All right, go ahead.
12              MR. SMITH:  Judge, I just wanted to address the
13   chats, the IRC chats that are alluded to in the complaint.
14   Judge, it's outrageous.  They appear to be almost 10 years
15   old.  In other words, what the government seems to be
16   offering as knowledge in this complaint is that he was
17   aware at some point of a password many years ago.
18   Knowledge of chats in 2009, Judge, does not equate to
19   knowing that you have child pornography on your computer.
20   And that's the leap that the government is making here, and
21   it's not correct, Judge.  It's misconstruing the chats, to
22   put it mildly.  I mean, the government has offered
23   essentially, you know, commentary made out of context and
24   quite frankly collegial and joking, Judge, as somehow
25   offered for knowledge of this.  And it's outrageous.
```

```
1                          PROCEEDINGS              24
```

2          Most outrageous, though, is to stand here and have

3  to respond to arguments that were made pertaining to

4  conduct alleged about my client that he's not charged with

5  at all in this document.  There was a lot of pretty

6  outrageous things that were said; and, Judge, just as a

7  basic matter, the government's conducted an investigation,

8  they've charged my client with some terrible-sounding

9  offenses, and it's quite safe to say that if they had any

10  basis to believe that he committed a sexual assault at all,

11  that it would be in this complaint, so --

12          THE COURT:  Well, I'm not sure it would be a

13  federal crime.

14          MR. SMITH:  It's wholly offensive to, you know,

15  hear the agents make those statements regarding my client's

16  character.

17          THE COURT:  Anything else?

18          MR. KOSS:  In addition, Judge, and, you know,

19  there's no pictures of my client involved in any type of

20  sexual assault.  We have no idea if my client's even at the

21  residence or at the location at that time.  And, again, I'm

22  not sure that that has anything to do with whether or not

23  he's willing to come back to court and face these charges,

24  as he is every time.  If you look at the presentence

25  report, they outline some fairly strict guidelines, which

```
 1                        PROCEEDINGS              25
 2    he is more than willing to abide by all of them, including,
 3    which was one of your earlier concerns, forfeiting any
 4    computers --
 5            THE COURT:  Well, let me ask you something.  I
 6    want you to focus on something.  If you look at pages 10
 7    and 11 of the complaint, I mean, the first statement on
 8    page 10 and the last statement before subparagraph F on
 9    page 11 seem to suggest that Mr. Schulte viewed the images.
10            MR. KOSS:  I agree that that does seem to --
11            THE COURT:  I mean, it doesn't -- the first thing
12    on page 10, "It doesn't really look like kid porn to me,
13    but I don't know.  You guys decide."  Then the last
14    statement on page 11 before subparagraph F, Mr. Schulte is
15    alleged to have said, "You can't even tell they're underage
16    if they even are …"  I mean, that seems to suggest that
17    he's looking at the images.
18            MR. KOSS:  Right, but he's not -- first of all,
19    there's two things that I need to point out.  One, he's not
20    looking at any images that they're charging with him today.
21    Let's be clear about that.  We don't know what he's talking
22    about, but this is something literally from 2009 that
23    someone --
24            THE COURT:  Well, it sounds like they're sexually
25    suggestive images.
```

```
 1                         PROCEEDINGS                26
```

 2          MR. KOSS:  They could be.

 3          THE COURT:  I mean, you're not looking at a

 4  picture of a sailboat and saying, "It doesn't look like kid

 5  porn to me."

 6          MR. KOSS:  Oh, I agree, and I think it could beg

 7  pornography.  It has not been clear that it's child

 8  pornography.  But what's clear is that it happened in March

 9  of 2009, and they looked at one image.  And my client

10  actually says, "If they even are underage, it doesn't

11  appear to me that they are."

12          But that's not what they're -- that's literally

13  something from nine years ago that is in a chat that we

14  don't have any -- you know, we have a very limited portion

15  of.  But, certainly, I do not believe connects to whether

16  or not he knowingly possessed this stuff today.

17          And as they said numerous times, that he's such an

18  expert and would wipe his trail clean, if any of that is

19  true, as the prosecution suggested, then we wouldn't be

20  sitting here today.  If my client had any idea that --

21          THE COURT:  Well, sophistication is a continuum.

22          MR. KOSS:  Of course, Judge.  But if my client had

23  any idea, respectfully, that there was child porn on a

24  virtual machine -- not on his hard drive but inside a

25  virtual machine located and accessible through is hard

1

2    drive -- he most certainly would not have handed over the

3    gateway to it and given us the passwords.  Quite frankly,

4    Judge, they would have never gotten access to it had he not

5    given them the phone.  And we gave them that in complete

6    good faith, believing that there was nothing to hide.

7            And it's a lot more complicated than the

8    government is making it seem.  This is not in his personal

9    hard drive, you know, in a folder named Child Porn,

10   Subsection B.  This is in something in a virtual machine

11   that even they concede in their complaint that anybody

12   looking at it, including their own computer science people

13   under the title Data wouldn't even think twice about and

14   would think that are regular binary images.  And only if

15   you would encrypt it and download that encrypted stuff

16   would you see the horrible things that are inside.  And

17   there's no evidence here before you today that that ever

18   happened.

19           And what I'm suggesting is that Mr. Schulte should

20   be released on a bond with those strict considerations put

21   in place by pretrial.  He has gratefully -- you know, he

22   has served his country almost every day of his professional

23   life.  He has fought on the frontline of this country's war

24   against terrorism; he has made substantial contributions to

25   it.  And at the time, while securing the highest level of

1

2  security clearance, had been vetted at all sorts of levels.

3  And I don't want your Honor to think that he was asked

4  specifically about child porn because they had any thoughts

5  of it; those are one of the questions that they ask in

6  these background polygraphs that the CIA does.  They ask

7  about that, they ask about drug use.  And he passed with

8  flying colors.

9            And I should note, Judge, that the government has

10  had for months all of Mr. Schulte's computers, everything,

11  and there is nothing in this complaint at all that mentions

12  any word or contact or anything involving child porn from

13  2017, '16, '15, '14, '13; none -- no IRC chats, no words,

14  no discussions.  All he has is an allegation that when he

15  was 19 or 20, that he talked about having sex with high

16  school girls.  He might have been dating a high school girl

17  when he was 19 years old.  And that's how old he was at

18  that time.

19            And so what I'm suggesting to the Court is this is

20  not as clear as it seems.  And I am respectfully requesting

21  that, due to the strict constraints, including forfeiting

22  his computer, which he will willingly, more than willingly

23  do, that he is released on the bond requested by the

24  Pretrial Services in this case.

25            THE COURT:  Anything else you gentlemen want to

```
 1                        PROCEEDINGS                    29
 2   add before I hear from the government again?
 3              MR. SMITH:  No, Judge.
 4              THE COURT:  Okay.
 5              MR. LAROCHE:  Thank you, Judge.  I first want
 6   to --
 7              THE COURT:  Well, let me ask you -- let me ask
 8   you:  Were the images found on Mr. Schulte's computer, were
 9   they found on servers, or were they found someplace else?
10              MR. LAROCHE:  So the way we found them, your
11   Honor, was to access them through his computer.  So to
12   explain the technology behind this, on his computer there
13   is a virtual machine which has a password.  That's the
14   first layer of encryption.  You go through that, there is
15   a home directory.  The home directory is for Mr. Schulte.
16   Once you get through that home directory, there was the
17   data file, the third level of encryption.
18              THE COURT:  Okay, and we're still talking about
19   his desktop computer, is that right?
20              MR. LAROCHE:  That's how we found it, your
21   Honor.  Now, whether on that virtual machine others had
22   access, potentially.  But that's how we found it.  But I
23   want to be very --
24              THE COURT:  And were there -- let me just ask
25   you a few other questions here.  And I'm sorry to
```

```
 1                        PROCEEDINGS              30
 2   interrupt; I just want to make sure I understand the
 3   situation.  And was there other pieces of hardware in
 4   Mr. Schulte's apartment that were servers?
 5            MR. LAROCHE:  Yes, there were, your Honor.
 6            THE COURT:  Okay.  And the images were,
 7   regardless of whether they existed on the servers, they
 8   were found on his desktop machine, is that right?
 9            MR. LAROCHE:  Whether they are technically
10   stored on the server, your Honor, I think is a technical
11   issue.  They were accessed through his computer.
12            THE COURT:  Okay.  Let me ask this:  If the
13   servers were not working, if the servers were
14   disconnected, if the servers were rendered inoperable
15   somehow and all you had was the defendant's desktop, could
16   you still access the images?
17            MR. LAROCHE:  I don't believe so, your Honor,
18   because he set it up in a way that he would have to go
19   through the virtual machine, through his home directory
20   into this data file.  And if I can explain --
21            THE COURT:  And the data file's on the server or
22   in the desktop, or is that the wrong question to ask?
23            MR. LAROCHE:  I think it's the wrong question
24   because I believe it would be accessed through what is
25   being run on the servers.  That's my understanding of how
```

1

2  it would work.  It's not like he downloaded these things

3  and they're in his -- like, for instance, you have your

4  whatever drive is on your home computer -- the images are

5  not there.  Like, they were through several layers of

6  encryption.

7            But just on the password thing because I

8  think --

9            THE COURT:  I mean, the defendant's contention

10 is, if I understand the defendant's contention, at least

11 in part, the defendant's contention is that the images

12 were on servers that he made accessible -- that

13 Mr. Schulte made accessible to the public.  And I'm trying

14 to understand whether or not the images were on the

15 servers or whether they were on his desktop.  It sounds as

16 if you're saying they were -- maybe I'm misunderstanding

17 you, and if I am, correct me -- it sounds as if you're

18 saying they were on his desktop, but you had to go through

19 the server to access them; is that --

20            MR. LAROCHE:  That's my understanding, your

21 Honor; that's correct.

22            THE COURT:  I see.

23            MR. LAROCHE:  But if I can be clear on the

24 passwords --

25            THE COURT:  Go ahead.

```
 1                          PROCEEDINGS              32

 2              MR. LAROCHE:  -- and the encryption that he set

 3   up?  Just refer to page 13 of the complaint; this is a

 4   meeting where his attorneys were present, so either he's

 5   lying to his attorneys or he lied during this meeting,

 6   "Mr. Schulte explained" -- this is 13D -- "that he had

 7   personally installed encryption on the desktop computer.

 8   He stated that he did not share the password for the

 9   encrypted portions of the desktop computer with anyone

10   else."

11              13E, "Schulte was asked what he maintained

12   inside the encrypted portions of the desktop computer.  He

13   responded that he used them to store pornography.  He

14   further refused to give those passwords to the

15   government."  The only reason we were able to identify the

16   passwords on his phone wasn't because he had a list that

17   said here are my passwords; these were passwords that were

18   entered into various things on his phone, and through

19   technical analysis, we were able to identify them.  So the

20   suggestion that he has been cooperative in getting through

21   all the encrypted portions of his computer is simply

22   incorrect.

23              THE COURT:  All right, go ahead.

24              MR. LAROCHE:  Just one final point, that saying

25   the argument that we made about the pictures that were
```

```
 1                        PROCEEDINGS                   33
```

 2   found on his phone are outrageous, I think the only thing

 3   outrageous about that, even accepting that it wasn't him,

 4   which we disagree with.  We believe there's enough

 5   evidence to say that it was him who had pictures of his

 6   friend on his phone.

 7              THE COURT:  Do we know -- the government has

 8   executed a search in Mr. Schulte's apartment, is that

 9   right?

10              MR. LAROCHE:  That's correct.

11              THE COURT:  I mean, the woman who's on the

12   bathroom floor, is it Mr. Schulte's bathroom?

13              MR. LAROCHE:  This is not his current location,

14   your Honor.  We believe that it's the bathroom that he was

15   living in when the pictures would have been taken.  He

16   previously was in Virginia.

17              THE COURT:  Well, is there something -- I mean,

18   have you searched the Virginia residence?

19              MR. LAROCHE:  No, your Honor.

20              THE COURT:  What's -- and my understanding,

21   based on your comments before, is that no faces are

22   depicted in the video --

23              MR. LAROCHE:  That's correct.

24              THE COURT:  Other than the woman, no faces are

25   depicted?

```
 1                        PROCEEDINGS              34

 2           MR. LAROCHE:  That's correct.

 3           THE COURT:  What's the basis for believing that

 4    that's either Mr. Schulte's bathroom or Mr. Schulte's

 5    engaging in the conduct that's depicted in the images?

 6           MR. LAROCHE:  I would say it's based on --

 7           THE COURT:  I mean, how do we know it's not

 8    images that were downloaded from some website?

 9           MR. LAROCHE:  Based on interviews with the

10    victim who told us that they did not consent and told us

11    that they believed that it could in fact be the bathroom.

12    And, just, your Honor, even if it --

13           THE COURT:  Was the victim able to identify

14    Mr. Schulte as the individual who engaged in the conduct?

15           MR. LAROCHE:  Not based on the pictures that we

16    showed the victim.  But to be clear, your Honor, even if

17    it --

18           THE COURT:  Hold on.  I just want to pursue this

19    a little bit.  But the victim knew Mr. Schulte?

20           MR. LAROCHE:  Yes, your Honor.

21           THE COURT:  Okay.  All right.  Go ahead.

22           MR. LAROCHE:   To be clear, even if this isn't

23    Mr. Schulte, it's outrageous that Mr. Schulte would keep

24    these types of images of someone who is supposed to be his

25    friend on his phone.  So we think this shows more than
```

PROCEEDINGS                35

1

2    just someone who wants to look at things; it shows someone

3    who cannot control their impulses.

4          THE COURT:  Well, bad taste and risk are two

5    different things, I think, but -- all right.  Anything

6    else you want to tell me?

7          MR. LAROCHE:  No, your Honor.

8          THE COURT:  All right.  Do defendants want to

9    respond?

10          MR. KOSS:  No, Judge.  I think that was -- that

11    we cleared that up.

12          THE COURT:  I'm sorry?

13          MR. KOSS:  I think that issue was cleared up.  I

14    think even -- he claimed the victim doesn't even know if

15    it was Mr. Schulte.  And I agree they are, again, still

16    photographs, not a video.  And we haven't seen these.  So

17    I'm not sure what they depict.

18          And it should be clear, Judge, if we're

19    concerned about Mr. Schulte cooperating and appearing, he

20    has appeared several times at the request of the U.S.

21    Attorney's Office and the FBI to be interviewed under

22    numerous occasions at their office; has also, every single

23    time he's traveled out of New York, he's provided his

24    itinerary to them, they've allowed him to travel.  He has

25    already given his passport over to the FBI months ago, and

PROCEEDINGS                    36

1

2   he has literally done every single thing they said with

3   regard to travel, appearance, requested appearances.  And

4   they have no reason to believe he will not show up and

5   appear in court.

6           Judge, and the last thing I would like to say is

7   that Mr. Schulte has a very strong family network.

8   Although he is here alone in New York, he has a very

9   strong network in Texas, all of which said they would fly

10  here immediately.  They only found out about this at 8:30

11  in the morning, his father, his mother, his three brothers

12  and his cousins, all of which would also help to show and

13  support and ensure his appearance in this court.

14          THE COURT:  Let me ask the defendants:  Do

15  counsel want to address the allegations in paragraph 6 on

16  page 12 of the complaint?  There are allegations in there

17  concerning certain Google searches that Mr. Schulte

18  allegedly made which --

19          MR. KOSS:  Yes, you know, Judge --

20          THE COURT:  -- which seem inconsistent with some

21  of the defendant's arguments here.

22          MR. KOSS:  Well, no, Judge, as you can see from

23  back in 2009 -- this is, again, back in 2011 -- I'm not

24  suggesting that Mr. Schulte did not view pornography at

25  all.  And in fact, we told --

```
 1                         PROCEEDINGS                    37
 2              THE COURT:  Well, no, look, I appreciate there's
 3  a difference between pornography and child pornography,
 4  but the allegations in paragraph 6 explicitly --
 5              MR. KOSS:  I understand.
 6              THE COURT:  -- refer to child pornography.
 7              MR. KOSS:  No, I understand that he Googled a few
 8  websites, Judge.  But there's no evidence -- and they
 9  would have had it had he downloaded those videos, had he
10  viewed those videos.  And, certainly, people Google all
11  sorts of outrageous things to either see what it's about,
12  to see what's going on, because a friend told them to,
13  because a friend sent them a link.  And, again, I'm not
14  suggesting that this conduct that's encourable; but on
15  the same side, I don't think Googling something and
16  putting it in a search field is in and of itself illegal
17  activity.  Again, this is someone --
18              THE COURT:  Well, no, this is -- the complaint
19  is not just page 6.  And the Court looks at the entirety
20  of the complaint, and --
21              MR. KOSS:  No, I agree, Judge.  But one thing I
22  would say is that --
23              THE COURT:  But the allegations in paragraph 6
24  seem to be inconsistent with the notion that Mr. Schulte
25  was victimized by the users of his servers.
```

```
 1                    PROCEEDINGS               38
 2         MR. KOSS:  Well, Judge, I would say this.  If he
 3 did in fact do those Google searches in April 9 of 2011,
 4 it is clear from that that the government has the ability
 5 to search all of his Google searches.  And throughout the
 6 entirety of 2012, '13, '14, '15, '16 and '17, he never as
 7 much even Googled something related to child pornography.
 8 And if he did, and if he did make an error in 2011 and do
 9 a foolish search, this is now 7, 8 years later.  And,
10 might I add, seven years of not behaving in that fashion;
11 because if he did behave in that way, I assure you it
12 would have been included in this complaint for your
13 consideration.  And the fact that it is omitted and that
14 that is all they have is one or two searches from two
15 different months in 2011 over the course of the last
16 decade, I suggest to you that that's the aberration, not
17 the norm.
18         MR. LAROCHE:  Your Honor, if I could just
19 respond to that?
20         THE COURT:  Yes.
21         MR. LAROCHE:  The defendant is not the unluckiest
22 person in the world here.  I mean, the complaint isn't
23 just Google searches on one day.  I mean, there are chats,
24 there are thousands of images, there are the Google
25 searches, there are his own statements.  And there is also
```

```
 1                          PROCEEDINGS                 39
 2  evidence to respond --
 3            THE COURT:  Well, the statements, let me ask you
 4  about that.  The statement that's quoted refers to
 5  pornography, not child pornography.  Is that --
 6            MR. LAROCHE:  That's correct.  I mean, he did
 7  not admit to us that he looked at child pornography.
 8            THE COURT:  Okay.
 9            MR. LAROCHE:  But I'd also note that there's
10  evidence that he used TOR on his computer, which probably
11  would have been what he used to go to illicit websites,
12  and there's simply no way to track that.  So, yes, sure,
13  he probably did make a mistake in 2012.  That doesn't take
14  away from the rest of the evidence that we have in this
15  complaint.
16            THE COURT:  All right.  Did you want to add
17  something else on behalf of Mr. Schulte?
18            MR. KOSS:  I just wanted to say, Judge, that I
19  think it is clear that the fact that, and by the
20  government's admission, that if the servers are shut down,
21  you cannot access this.  It's clear that these are in fact
22  stored on the server.  Whether or not someone, meaning the
23  government, scientists, computer scientists chose to
24  access them through a route through Mr. Schulte's
25  computer, my point is the same is that they are on a
```

1

2  server and they are encrypted.  And anyone who would look

3  at them with their two eyes would see 1100.. this, this,

4  and it would be listed as data.  And no one would think

5  otherwise.  And there are no IRC chats in any of these

6  years to suggest that he's promoting this, that he's

7  saying come look at this and that.  In fact, the server

8  has been, you know, less and less active necessarily as

9  the years have gone by, the point being this is stuff

10 that's on the server, not on his computer.  And I think

11 that's clear from the government's own admission.

12         THE COURT:  Well, I don't think it's clear.  I

13 mean, what I understood the government to proffer is that

14 it's on Mr. Schulte's computer that is accessed through

15 the server is what I understood the government to be

16 saying.

17         MR. LAROCHE:  That's correct.  His home

18 directory.

19         MR. KOSS:  No, I think what they said is they

20 accessed the material on the server through his home

21 computer.  That's different than saying it's on the home

22 computer.

23         THE COURT:  That's not my understanding of what

24 the government's saying.  Am I misunderstanding you?

25         MR. LAROCHE:  No, your Honor.

```
 1                          PROCEEDINGS              41
 2              THE COURT:  Okay.  Does the government have any
 3   information about the polygraph tests that the defense
 4   counsel described?
 5              MR. LAROCHE:  Just one moment, your Honor?
 6              THE COURT:  Yes.
 7              MR. LAROCHE:  We simply don't have access to
 8   that in the course of our investigation, your Honor.
 9              THE COURT:  Okay.
10              MR. KOSS:  Judge, what I would say is I think the
11   government is aware and has communicated to us on numerous
12   times that they are aware that Mr. Schulte had the highest
13   level of security clearance.  And in order to get that --
14              THE COURT:  No, my question really was whether
15   or not the government has any information about the
16   polygraph tests asking Mr. Schulte about child
17   pornography.
18              MR. KOSS:  And just to be clear, Judge, my client
19   agrees with any of the recommendations made by Pretrial,
20   that he would abide by any of them.
21              THE COURT:  Let me just come back to the
22   government for a minute.  One of the things defense
23   counsel proffered was that Mr. Schulte voluntarily
24   surrendered his passport to the government some time ago
25   and kept the government informed of any of his out-of-town
```

PROCEEDINGS                    42

1

2  trips.  Is that accurate?

3         MR. LAROCHE:  That is accurate, your Honor.  I

4  would note for the record that, when we searched his

5  apartment, the defendant had kept his diplomatic passport,

6  which he was supposed to turn in.  And so that was seized.

7  But they were correct in saying that they've kept us up to

8  date on his travel.

9         THE COURT:  All right.  Well, does that suggest

10 that detention is appropriate here; it's going to be on

11 the grounds of dangerousness and not risk of

12 nonappearance?

13        MR. LAROCHE:  I believe it should be on both,

14 your Honor.  I still think he's a risk of flight given

15 that now he is in fact charged and he is facing --

16        THE COURT:  Well, it sounds like, based on the

17 interview, that he knew what the government was looking

18 at.

19        MR. LAROCHE:  That wasn't the basis of the

20 interview, your Honor.

21        THE COURT:  When he was interviewed, what was he

22 told about why the government wanted to talk to him?

23        MR. LAROCHE:  Your Honor, I would say that's

24 something we're not asking the Court to consider at this

25 time.  I would just say that the basis of the interview

| 1 | PROCEEDINGS                    43 |

weren't these charges.

2

3          MR. KOSS:  And I do think --

4          THE COURT:  Well, hold on.

5          You have paragraph 7 in the complaint.  I mean,
6 if you want to rely on part of the interview, I think I'm
7 entitled to the relevant facts concerning the interview.

8          I mean, if there are national -- I don't know if
9 there are national security concerns or not, but if -- you
10 know, I'm not sure you can tell me half the story of the
11 interview and have me rely on that.

12          MR. LAROCHE:  Your Honor, we're simply not --
13 we're asking the Court to rely on the government's
14 arguments.  Before this -- these were statements he made
15 at the interview which we're relying on those statements.
16 We think the underlying basis for the interview -- we're
17 not asking the Court to consider that to detain him or
18 not.  That's simply something we're just not asking the
19 Court to consider.

20          THE COURT:  Well, does the defense want to tell
21 me what Mr. Schulte was told the purpose of the interview
22 was?

23          MR. KOSS:  I think that -- my understanding,
24 Judge, that Mr. Schulte was made aware that there could be
25 charges filed against him, and he wanted to go in and

1                        PROCEEDINGS              44

2   speak to them and be as open and honest as possible.  And

3   he did that on numerous occasions.

4           THE COURT:  How many occasions?

5           MR. KOSS:  I think it was either two or three.  I

6   think it was three occasions.  I was there on all three,

7   including one of which where we handed over the telephone

8   and unblocked the password to the phone, which they did

9   not have, and gave that to them.  And as I said, I have

10  been in constant contact with the three assistant U.S.

11  attorneys working on this matter literally on a weekly

12  basis for the last 4,5, 6 months.  And any time

13  Mr. Schulte even thought about traveling, I provided them

14  an itinerary.  I cleared it with them first and made sure

15  it was okay.  On any occasion that they said they might

16  want him close so that he could speak to them, I cancelled

17  the travel and rescheduled it so that we would be

18  available if they needed him at any given time.

19          THE COURT:  And the images that are described on

20  pages 4 and 5 of the complaint, subparagraphs i through

21  iv, those were accessed with the passwords recovered from

22  Mr. Schulte's cell phone, is that right?

23          MR. LAROCHE:  That's correct, your Honor.  They

24  were within the data file that the password accessed.

25  Once you accessed that data file, the entire cache of

```
 1                        PROCEEDINGS              45
```

 2  images was present.  And that was using the password that

 3  was found on Mr. Schulte's cell phone.

 4         MR. KOSS:  Judge, I know that those are bad

 5  images, but one thing I would like to draw your attention

 6  to is, A, is that the password they gave was the public

 7  password that was on the server.  But, secondly, these are

 8  older videos from 2010 and 2008 that were stored on the

 9  server a long time ago.

10         THE COURT:  Well, I mean, with child

11  pornography, it doesn't matter if it was created in 1950

12  or created in 2017; it's a crime to possess it.

13         MR. KOSS:  No, I didn't want to --

14         THE COURT:  I mean, the age of it --

15         MR. KOSS:  No, what I'm saying --

16         THE COURT:  I'm not sure how that bears on

17  anything.

18         MR. KOSS:  Well, because what I'm suggesting is

19  that these were things that were added to the server years

20  ago by other individuals, that Mr. Schulte 8, 9 years

21  later would have no idea what they are because they were

22  encrypted.  That's what I'm saying.  I wasn't suggesting

23  anything to the contrary.

24         MR. LAROCHE:  He created this server after this.

25  He created the passwords.  He stated that he didn't give

```
 1                          PROCEEDINGS                    46
 2   those passwords to anyone else.  He had access.
 3           MR. KOSS:  That was for the desktop he didn't
 4   give anybody the passwords for the desktop.  It's an
 5   extremely serious case, Judge; there's no question about
 6   it.
 7           THE COURT:  Agreed, it is.
 8           MR. KOSS:  Our only request is that, given
 9   Mr. Schulte's complete lack of criminal history,
10   dedication to his country, lack of criminal record, that
11   he just be able to be out under the auspices of pretrial
12   detention, the phone detention --
13           THE COURT:  All right.
14           MR. KOSS:  -- the computer, while he fights this
15   difficult case.  And I submit it is not as easy as it
16   appears.
17           THE COURT:  All right, well, this is a
18   presumption case, and I think it's a close case.  But on
19   balance, I don't think the defense has rebutted the
20   presumption with respect to dangerousness.
21           With respect to risk of nonappearance, I mean
22   the two bases to detain an individual are risk of
23   nonappearance and risk of dangerousness.  And with respect
24   to the risk of nonappearance, I think -- I conclude that
25   Mr. Schulte's conduct throughout the investigation in
```

1

2  surrendering his passport, his advising the government

3  when and where he was going to travel sufficiently rebuts

4  the risk of nonappearance.

5          But the risk of dangerousness here is, I think,

6  a different proposition.  There are sufficient allegations

7  in the complaint that lead me to conclude that the

8  contention that Mr. Schulte was the victim of people who

9  used his servers to store child pornography without his

10 knowledge or consent just doesn't seem likely.  The

11 government was able to unlock the pornographic images --

12 the child pornographic images with the password recovered

13 from Mr. Schulte's telephone, his cell phone.  And there

14 are several chats in which Mr. Schulte suggests -- that

15 suggest Mr. Schulte had knowledge of the content of the

16 images.  The fact that they're several years old or eight

17 years old I don't think really is that material.  And at

18 page 7 of the complaint a chat is described in which

19 Mr. Schulte's extolling the privacy that his servers will

20 provide and discusses their utility for storing

21 pornography or child pornography, which it seems to me

22 inconsistent with someone who's creating servers or

23 maintaining servers so that they can play online games.

24          There are other statements -- there's another

25 statement --

```
 1                    PROCEEDINGS              48
 2          MR. KOSS:  I mean, Judge, I think if you --
 3          THE COURT:  Please, I'm ruling now, okay?
 4          MR. KOSS:  I apologize.
 5          THE COURT:  I asked both sides if there was
 6  anything else they wanted to say, and they told me no.
 7  Okay?
 8          There are other statements recounted at pages 10
 9  and 11 which suggest that Mr. Schulte had viewed the
10  images.  I -- there are specific allegations in the
11  complaint that suggest that Mr. Schulte knew what was
12  being stored on his servers.
13          The government is correct that child pornography
14  has a great -- creates a great danger to the community
15  because it victimizes very innocent victims, and there is
16  a presumption of dangerousness from the child pornography
17  offenses that are charged in the complaint.  And I don't
18  think that that presumption has been rebutted here.  So
19  I'm going to direct that Mr. Schulte be detained pending
20  trial.
21          I am not relying on the -- just out of clarity,
22  I'm not relying on the government's proffer with respect
23  to the alleged sexual assault on the woman in the bathroom
24  because I don't think facts have been proffered that tie
25  that incident -- that tie Mr. Schulte to the conduct in
```

```
 1                       PROCEEDINGS              49
 2  that incident.  He may have had the images on one of his
 3  devices, but we don't know what male figure, even if it is
 4  a male figure, is depicted in the photographs.  No face is
 5  depicted.  My understanding, from the government's
 6  proffer, is that the bathroom hasn't been identified as
 7  Mr. Schulte's bathroom.  So I'm not relying on that.  But
 8  even outside of that, I think the defense has not rebutted
 9  the presumption of dangerousness here.
10           All right.  Preliminary hearing date, 14 days?
11           MR. KOSS:  Yes, Judge.
12           THE COURT:  All right, that's going to be
13  September 7.
14           All right, anything else?
15           MR. LAROCHE:  No, your Honor.  Thank you.
16           THE COURT:  Anything else from defense?
17           MR. SMITH:  No, your Honor.
18           THE COURT:  Okay.
19             (Whereupon, the matter is adjourned.)
20
21
22
23
24
25
```

50

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the case of USA v. Schulte,

Docket #1:17-mj-06401-UA, was prepared using digital

transcription software and is a true and accurate record of

the proceedings.

Signature_____*Carole Ludwig*_____

                Carole Ludwig

Date:    September 6, 2017